The People, ex rel. The Port Chester Savings Bank, Respondent, v. David Cromwell, Treasurer, etc., Appellant.

Where, upon motion for a *mandamus*, opposing affidavits are read, which conflict with the averments in the moving affidavits, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true.

M. & Co. were the legal depositaries of the moneys of the county of W., applicable to the payment of its bonded indebtedness, and had been put in funds by defendant, the county treasurer, to pay the coupons for interest on its bonds. The relator held and presented to M. & Co. certain of said coupons, and upon being asked as to the manner of payment desired, requested a draft for the amount. Thereupon M. & Co. delivered to it their sight draft on a New York bank for the amount, and the relator surrendered the coupons, which were immediately charged to the defendant's account as paid and were afterward delivered up to him. At the time of the transaction M. & Co. were insolvent, but had on hand money sufficient, and would have paid the coupons in currency but for the election of the relator to take a draft. The draft was presented and protested for non-acceptance and non-payment, M. & Co. having failed meanwhile. *Held*, that the relator was not entitled to a peremptory *mandamus* requiring defendant to pay the coupons; that the authority of M. & Co. was limited to payment, and the relator having accepted the draft in lieu of money, he did so upon his own responsibility; the transaction was, as against the county, a payment and it was not chargeable with the loss. *Indig* v. *Nat. City Bk.* (80 N. Y. 100), *Turner* v. *Bank of F. L.* (3 Keyes, 425), and the cases arising directly between debtor and creditor, distinguished.

*People, ex rel. P. C. Savings Bk.*, v. *Cromwell* (38 Hun, 384), reversed.

(Submitted April 27, 1886; decided June 1, 1886.)

Appeal from order of the General Term of the Supreme Court, in the second judicial department, made December 15, 1885, which reversed an order of Special Term denying an application for a peremptory writ of *mandamus*, and which directed the issuing of such a writ as prayed for by the relator commanding defendant, as treasurer of the county of Westchester, to pay to the relator the sum of $521.50, the amount of certain coupons for interest upon bonds issued by said county. (Reported below, 38 Hun, 384.)

The material facts are stated in the opinion.

*Wilson Brown, Jr.,* for appellant. As the application was for a peremptory *mandamus,* the facts, so far as they are disputed, must be taken as disclosed by the affidavits on the part of the defendant. (*People* v. *Richards,* 21 Week. Dig. 365, 368; 73 N. Y. 173; 64 id. 600; 91 id. 385; 98 id. 620.) Unless defendant's affidavits are treated as the facts, the court could only have issued an alternative writ. (Code, § 2070.) The legal effect of the acceptance of the draft was to accept Masterton & Co. as the debtor and release the defendant. (*People* v. *Merch. Bk.,* 78 N. Y. 269.) The General Term had no power to grant or issue the *mandamus.* Such a writ can only be granted at Special Term. (Code, §§ 2068, 2069.)

*Isaac N. Mills* for respondent. Coupons like these payable to bearer at a certain time and place are like promissory notes payable at a certain time and place. (*Evertson* v. *Nat. Bk. of Newport,* 66 N. Y. 14, 18; *Butler* v. *Duprat,* 51 N. Y. Sup. 86.) Neither presentation or demand for payment at the time and place specified, nor protest or notice of non-payment are necessary to bind the obligor upon the coupons. (*Indig* v. *Nat. Bk.,* 80 N. Y. 107; *Butler* v. *Duprat,* 51 N. Y. Sup. 86; Daniel on Neg. Instr. [3d ed.] 517, § 1507; Burr. on Pub. Securities, 579, 580; 22 Alb. L. J. 478.) It is perfectly immaterial whether relator's cashier took the check without any discussion between himself and Mr. Bissell, the cashier of Masterton & Co., as to whether the money or a check should be given, or whether Mr. Marshall suggested taking the check, and even asked for a check, and stated that he preferred it to money. (*Syracuse R. R. Co.* v. *Collins,* 1 Abb. N. C. 47, 49; *S. C.,* 57 N. Y. 641; *Bradford* v. *Fox,* 38 id. 290.) A debtor's own check, or note or bill, given to his creditor in payment of his debt, will not in this State of itself operate as payment unless it be paid; and if upon due presentation it be not paid, the debtor remains liable upon the original debt or obligation, and the creditor may maintain an action against the debtor thereon even if he gave a receipt in full on receiving the check, note

or bill. (*Syracuse R. R. Co.* v. *Collins*, 1 Abb. N. C. 47, 49, 50 ; 57 N. Y. 641; *Feldman* v. *Beier*, 78 id. 298 ; *Hill* v. *Beebe*, 13 id. 562; *Bradford* v. *Fox*, 38 id. 289, 291; *Thomson* v. *Bk. of B. N. A.*, 82 id. 5, 8; *Scott* v. *Meeker*, 20 Hun, 164, 165 ; *Sweet* v. *Titus*, 4 id. 639.) The taking by a creditor from his debtor or the debtor's agent of an obligation, *i. e.*, note, check or bill of a third party, for the antecedent debt, does not, in the absence of an express agreement to take the same as payment, constitute payment of the debt; and if the third person's obligation be dishonored, the creditor may hold his debtor liable upon the original debt, unless such obligation of the third person would have been honored had the creditor used due diligence to enforce it. (*Turner* v. *Bk. of Fox Lake*, 3 Keyes, 425; *S. C.*, 4 Abb. Ct. App. Dec. 434; *Burkhalter* v. *Second Nat. Bk.*, 42 N. Y. 538, 541, 542 ; *Smith* v. *Miller*, 43 id. 173; *Indig* v. *Nat. City Bk.*, 80 id. 100, 107; *Bd. of Education* v. *Fonda*, 77 id. 351, 362; *Noel* v. *Murray*, 13 id. 167, 169, 170; *Claflin* v. *Ostrom*, 54 id. 582, 585; *McQuade* v. *Irwin*, 39 N. Y. Sup. 398, 399; *Whitaker* v. *Whitaker*, 4 Hun, 810; *Kelly* v. *Bk.*, 52 Barb. 535 ; *Johnson* v. *Bk.*, 5 Rob. 589, 594; *Roberts* v. *Fisher*, 43 N. Y. 159.) Where the creditor takes his debtor's paper, even an express agreement to take it in satisfaction of the debt will not extinguish the original debt. (*Syracuse R. R. Co.* v. *Collins*, 1 Abb. N. C. 49; *Hill* v. *Beebe*, 13 N. Y. 562.) Where the obligation of a third person is taken by the creditor, if it be so taken upon an express agreement as payment, it will be held to be payment unless in fact it were worthless when taken. (*Noel* v. *Murray*, 13 N. Y. 169, 172; *Turner* v. *Bk. of Fox Lake*, 3 Keyes, 426; *Johnson* v. *Bk. of N. A.*, 5 Rob. 590.) There being no funds in the National Citizens' Bank to meet the check, and the check, therefore, being worthless, the relator was under no duty to present it at all, and it was wholly immaterial what diligence, if any, the relator used in presenting the check at said bank. (*Brush* v. *Barnett*, 82 N. Y. 403; *Smith* v. *Miller*, 43 id. 75, 176; *Johnson* v. *Bk. of N. A.*, 5 Rob. 594.) Masterton & Co. are to be regarded as agents of the county treasurer.

(*Indig* v. *Nat. City Bk.*, 80 N.Y. 107; Burr. on Pub. Securities, 580; *Bd. of Education* v. *Fonda*, 77 N. Y. 351, 361, 362; *Turner* v. *Bk. of Fox Lake*, 3 Keyes, 426; *Burkhalter* v. *Second Nat. Bk.*, 42 N. Y. 538, 541–2; *Smith* v. *Miller*, 43 id. 171; *Indig* v. *Nat. City Bk.*, 80 id. 100, 107.)   The fact that a public officer has wrongfully parted with public money is no defense to a claim by the party rightfully entitled to the money to a *mandamus* against him. (*People, ex rel. Martin*, v. *Brown*, 55 N. Y. 188; *People, ex rel. Dannat*, v. *Comptroller*, 77 id. 50.) Failure of the relator to surrender the check is immaterial.  . If necessary it can be surrendered now.   (*Bradford* v. *Fox*, 38 N. Y. 292; *Nichols* v. *Michael*, 23 id. 267; *Whitaker* v. *Whitaker*, 4 Hun, 810.)   Where money has been raised by taxation to pay certain public obligations, and has been placed in the hands of a public officer for the purpose of his paying them with it, a *mandamus* to such officer is the appropriate remedy to compel him to do so. (*People, ex rel. Fiedler*, v. *Mead*, 24 N. Y. 114, 119–123; *S. C.*, 36 id. 224, 228, 229; *People, ex rel. Martin*, v. *Brown*, 55 id. 180, 187; *People, ex rel. N. Y. C. & H. R. R. R. Co.*, v. *Havemeyer*, 3 Hun, 97, 102; *Ross* v. *Curtis*, 31 N. Y. 609–10.) Even a right of action in the relators against the appellant for his wrongful refusal to pay the coupons, or against the county upon the coupons, will not prevent *mandamus*. (*People, ex rel. Fiedler*, v. *Mead*, 24 N. Y. 120; *People, ex rel. McKown*, v. *Green*, 50 How. Pr. 504.) The General Term properly granted the motion for a *mandamus*, and after reversing the order of Special Term was not obliged to remit the motion to the Special Term to be granted there.   (*People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 543, 560; Code of Civ. Pro., § 1317; *Bennett* v. *Lake*, 74 N. Y. 93; *Howard* v. *Freeman*, 7 Rob. 25; 3 Abb. [N. S.] 292, 309; *Price* v. *Price*, 33 Hun, 432, 435, 476, 481; *Knaner* v. *Globe Mut. L. Ins. Co.*, 46 N. Y. Sup. 371, 373; 4 Wait's Pr. 336, § 2; *Griffin* v. *Hembold*, 72 N. Y. 437, 441; *Shaffer* v. *Hahn*, 28 Hun, 264, 263; *People, ex rel. McKenzie*, v. *Supervisors*, 30 id. 148, 150; *People, ex rel. Humphrey*, v. *Supervisors*, 30 id. 146, 148; Code of Civ. Pro., § 208.)

Ruger, Ch. J. In the consideration of this appeal, the defendant is entitled to have the facts determined, in accordance with the relation thereof, contained in his opposing affidavits. The statements of the affidavits are conflicting, and as the relator, notwithstanding that fact, still demanded a peremptory *mandamus*, it could only be granted upon the assumption that there were no disputed facts. Its action was equivalent to a demurrer to the case presented by the opposing affidavits, and the question thus presented must be determined upon the assumption of their truth. (*People* v. *Richards*, 99 N. Y. 620 ; *People* v. *Supervisors*, 73 id. 173, 175 ; *People* v. *Supervisors*, 64 id. 600.) The facts thus presented are that Masterton & Co. were the legal depositaries of the moneys of the county of Westchester applicable to the redemption of its bonded indebtedness, and before November 1, 1884, had been put in funds by the defendant, its county treasurer, to redeem the coupons for interest, on its debt maturing on that day. The relator held such coupons to the amount of upward of $500, and on November 6, 1884, presented them to Masterton & Co. *for payment*, and upon being interrogated as to the manner of payment, stated that it wished a draft for the amount. Thereupon Masterton & Co. delivered to the relator their sight draft upon the National City Bank of New York for the amount thereof, and it surrendered to Masterton & Co. its coupons, which were immediately charged to the defendant's account as paid, and the coupons were afterward delivered to the county treasurer. At the time of this transaction, Masterton & Co. had on hand cash sufficient to pay the amount of such coupons, and would have paid them in currency, but for the election of the relator to take the amount in a draft. The draft was presented by the relator to the National City Bank some time in November thereafter, and was protested for non-acceptance and non-payment, Masterton & Co. having failed in the meantime. That fact was made public on the eighth, although Masterton & Co. were insolvent on the sixth, and remained so until after the draft was presented,

Upon these facts the relator applied for a peremptory *mandamus* against the county treasurer, requiring him to pay the

coupons.  The defendant alleges that he had no money in his hands with which to pay them, and no means for raising the amount from the tax payers of the county, by virtue of any statutory authority.

The remedy sought is of doubtful propriety in its application to the circumstances related, and it might well be said that payment of the general indebtedness of a county, cannot be enforced by the punishment of its financial officers; but as we are of the opinion that the relator has not shown a case entitling it to recover upon the merits, we prefer to dispose of the appeal upon that ground.

The claim of the relator is that the loss occasioned by the insolvency of Masterton & Co. shall be imposed upon the defendant and enforced by the compulsory process of the court.   It is evident that this loss resulted from the voluntary action of the relator in accepting a draft, instead of money, for the obligations of the county then surrendered, and that it thereby intended to discharge its claim upon the county, and accept in lieu thereof the responsibility of Masterton & Co.  This is the plain meaning of the transaction as evidenced by the unequivocal acts of the parties, and it cannot be obscured by supposed analogies to other situations.  Masterton & Co. were the special agents of the county to pay their coupons, as a bank is the agent of its depositor to pay his check.  If upon presentation of a check or order such agent or bank should refuse payment, the debt remains unpaid, but if the creditor accepts any thing other than legal currency in payment, the debt is discharged.  (*Crawford* v. *West Side Bank,* 100 N. Y. 50.)   The authority of the depositary is simple, and limited to the act of making payment, and if  the creditor goes further and deals with it for any other transaction than that of receiving payment, he does so upon his own responsibility, and must bear the consequent loss, if any, of such a transaction.

The surrender of the possession of the coupons, by the relator was inconsistent with the expectation of any continuance of liability on the part of the county thereon, as it was beyond the power of Masterton & Co. to authorize such an expectation.   The county had provided the funds for the payment of

its indebtedness, and if the creditor accepted any thing else than cash for its obligations, he was at liberty to do it, but acted on his own responsibility in so doing. The entire scope of the agency of Masterton & Co. was to pay out the moneys of the county to its creditors in the amounts, to the persons and at the time specified in its obligations, and outside of the performance of this duty they had no power to bind or affect the county. The limitations upon their authority arose from the nature of the business they were authorized by statute to transact, and were obvious to all who had financial dealings with the county.

By the acceptance of the draft, the relator authorized Masterton & Co. to immediately appropriate to their own use so much of the funds as had been provided by the county to pay the coupons in question, and when such coupons were afterward delivered to the county, Masterton & Co. became entitled to credit therefor. It was thus placed beyond the power of the county to reclaim those funds, or hold the bondsmen of Masterton & Co. liable for default of their principal. Masterton & Co. were not parties to the obligations presented and were under no liability thereon, and their draft was the obligation of a third person accepted in exchange for the coupons surrendered. The defendant had no authority over this transaction, and it was beyond his power to influence or prevent it.

There is little analogy between this case and that of *Indig* v. *Nat. City Bank* (80 N. Y. 100), cited by the relator and apparently much relied on. There the defendant was an agent of the plaintiff, employed to make collection of a note at a distant point, and was sued for alleged negligence in accepting the draft of its own agent in payment of the collection. The liability depended solely upon the question of negligence. It was held that the collection was made according to the known and customary usages of business, and in accordance with the implied authority, conferred upon the agent in transacting such business for its principal. It was further intimated in the case that the plaintiff therein had suffered no loss, as it did not appear that the note had been paid, the maker not.

having sufficient funds on deposit at the place of payment at its maturity to pay it. The implication from this case is quite strong that if the maker had provided funds, as the defendant did here, to pay the obligation, that the transaction would have operated as payment of the note. This case is similar in some respects to that of *Smith* v. *Miller* (43 N. Y. 171), where it was said that "a creditor may so deal with negotiable securities received from his debtor for collection, and to be placed to his credit when paid, as to discharge the debtor from all liability whether the securities are in fact paid or not. He may make them his own so as to substitute the parties to the securities as his debtors, in place of his original debtor by his dealings with those parties, or by giving time for payment, or by any other act prejudicial to the interests of the debtor." (*Southwick* v. *Sax*, 9 Wend. 22; *Vernon* v. *Brown*, 2 Shaw, 296.) The same result will follow any neglect or laches of the creditor, in obtaining payment of negotiable instruments transferred, from which loss and injury ensues. In *Smith* v. *Miller* the defendants, who resided at Buffalo, were indebted to plaintiffs, living at New York, and in payment of such indebtedness remitted to them a sight draft on an apparently solvent firm, residing in the same city, with whom the drawers had funds. The plaintiff presented the draft and accepted a check upon a bank in New York from the drawees in payment thereof. This check would have been paid if presented on the day of its receipt, but the plaintiff omitted to present it until the next day, when payment was refused. The maker having in the meanwhile become insolvent, it was held that the plaintiff had by his laches released the drawers of the draft from liability, and constituted the makers of the check his debtors for the amount. The transaction there was directly between the debtor and creditor, and although in that regard much more favorable to the claims of the creditor than here, yet it was held that the creditor had lost his remedy against the debtor, although he had received the check of one of the parties to the draft in payment thereof.

The case here presented is also clearly distinguishable from

those arising directly between the debtor and creditor. In those cases there is no question as to the power of the debtor to authorize the continuance of his original liability, and in any transaction having in view the payment of his obligation, it is required that it shall be actually paid in order to discharge it, or that something shall be received by the creditor from the debtor under an express agreement that it shall operate as payment. The case of *Turner* v. *Bank of Fox Lake* (3 Keyes, 425), also cited by the relator, is not an authority in its favor. There the creditor sued upon a bill of exchange of which he had possession, but which had been reclaimed by him, after having been once surrendered in exchange for the check of the drawee. After payment of the check had been refused, the holder returned it to the drawee and recovered possession of the bill, and caused it to be duly protested for non-payment. It was held that the bill sued upon was given upon a sufficient consideration. In that case the check of a person liable as a party to the draft had been received in payment, and it was received by an agent for collection; and the question was, whether the agent had discharged his duty in making the collection with diligence and fidelity.

But little aid in the solution of the questions here presented can be derived from cases, arising between principals and collecting agents, as in such cases the question is usually one of negligence alone, and is governed largely by the usages of trade. Here no custom has been proved or can be proved, and but little evidence given as to the facts, upon which the situation of the parties would be affected, by the omission of the relator to present the check promptly. It certainly seems probable that having received the check on the sixth, it might have caused it to be presented in New York on the seventh, when it probably would have been paid; but whether so or not, the evidence is not before us to enable us to determine that question. Clearly the relator has not made a case which exempts it in law from the imputation of laches. In this case the relator accepted the obligation of a third person, in payment of its claim against the county, and having failed to realize the

amount of the security taken, without recovering possession of its coupons, seeks to re-establish a debt against the county. We think it is precluded from doing so by the defense of payment.

The order of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur.

Ordered accordingly.