THE PEOPLE OF THE STATE OF NEW YORK ex rel. PATRICK H. CORRIGAN, Respondent, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF BROOKLYN, Appellant.

*Veterans and volunteer firemen — protected against removal from office — purpose of the statute — change in the name of an office and a devolution of its duties upon another does not justify a dismissal.*

A veteran, and one who is also a volunteer fireman, is protected from removal from an office which he holds under a city government, except for cause and after a hearing.

As the object of the statute is to continue in office faithful, trustworthy and competent persons, it would not be a sufficient cause for removal that another person could be procured who was willing to serve at a lower rate of payment.

Where there has been an honest and substantial abolition of the office held by a veteran or by a volunteer fireman, he has no remedy when he is dismissed; but where there has been merely a change of names and a devolution of the duties of the office upon a new appointee, a dismissal of the veteran and volunteer fireman, in a case where no charges have been made against him and no hearing upon charges has been granted him, cannot be justified.

In a proceeding taken by a person who was a veteran and also a volunteer fireman for reinstatement to a position held by him, it appeared that the common council of the city of Brooklyn in 1886 appointed the relator keeper of the "Truant Home," and that he was called and known as "superintendent;" that in 1895 he was removed from his position under a resolution of the common council, by which it was stated that the position of superintendent was abolished "for economical reasons," and which further stated that the duties formerly performed by the superintendent should be devolved upon Eugene Martyn, a teacher of said home, and that John Eiseman should be appointed janitor. It appeared that the relator was the janitor of the "Home," and that the duties now performed by Eiseman were performed under his direction and were within his office.

*Held,* that the relator was entitled to be reinstated as janitor.

APPEAL by the defendants, The Mayor and Common Council of the City of Brooklyn, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 2d day of July, 1895, directing the defendant to reinstate the relator in his position as keeper of the Truant Home, and also from an order, entered in said clerk's office on the 13th day of August, 1895, denying the defendants' motion for a reargument of the original motion, and resettling the order granted on June 21, 1895, and the peremptory mandamus therein allowed.

*A. G. McDonald* and *H. O. Wood*, for the appellant.

*Charles J. Patterson*, for the respondent.

Pratt, J.:

This is an appeal from an order granted at Special Term direct-ing a peremptory writ of mandamus to issue commanding the defendant to reinstate the relator in the position held by him, and also from an order denying the motion made by defendant for a reargument of the original motion.

We think the opinion filed below at Special Term fully answers the contention made by the appellant; and we, therefore, recom-mend that the same be affirmed upon that opinion; and also that the decision upon the motion for a reargument be affirmed, with costs.

Dykman, J., concurred; Brown, P. J., not sitting.

The opinion of the Special Term was as follows:
Brown, J.:

On March 26, 1886, the relator, by a resolution of the common council, was appointed "keeper of the Truant Home." Thereafter he was called and known as "superintendent."

On January 3, 1895, he was removed from such position by a resolution of the same body, which is as follows:

"*Resolved*, That the position of superintendent and farmer at the Truant Home be and the same hereby are abolished from and after the first day of May, 1895, for economical reasons, and that the incumbents of the said several positions be, from and after said date, dismissed for the same reasons.

"*Resolved*, That the duties heretofore performed by the superin-tendent at the Truant Home be, from and after the first day of May, 1895, devolved upon Eugene Martyn, a teacher of said home.

"*Resolved*, * * * That John Eiseman be and he hereby is appointed janitor of the Truant Home, and that he receive for his services as such janitor the sum of four dollars per day. * * * "

The relator, being a veteran of the war and also a volunteer fire-man, was protected from removal except for cause shown after a hearing had. (Laws of 1888, chap. 583, tit. 22, § 9; Laws of 1892, chap. 577.)

The purpose and force of statutes of the character of those invoked by the relator have been set forth and explained by the Court of Appeals in *People ex rel. Munday* v. *Fire Commissioners* (72 N. Y. 445), and the statutes referred to have recently been applied in several cases before this court.

The intent of these and similar statutes, as was said in the case cited, was " to continue in the subordinate but important positions of the city government those who had proved themselves faithful and trustworthy as well as competent to discharge the duties of their stations; " and the cause assigned for removal must be personal to the incumbent of the position.

An officeholder has, however, no right to have the office maintained for his benefit, and hence he may be removed when the office is abolished, or when the appropriation for payment of the salary of such office is exhausted. But, as was said by Justice CULLEN, in the case of the clerks in the city clerk's office, to deprive a person of his employment by the abolition of his position, the abolition must be real and substantial, and not formal and nominal. Applying these rules to this case, the facts stated in the moving papers may be examined.

The resolution of the common council must be read as a whole. It abolished the office of keeper, and created that of janitor. It stated that this was done for " economical reasons." If the effect of this resolution was to substitute one man for another in the performance of the same duties at a reduced salary, it would, without doubt, fall within the prohibition of the statute, unless the incumbent refused to accept the reduced pay.

The object of the statute being, as was said by the Court of Appeals, to continue in office faithful, trustworthy and competent persons, it would not be a sufficient cause for their removal that another person could be procured who was willing to serve at a lower rate of pay. The incumbent should have an opportunity to remain in office at the reduced salary, and thus the " economical " spirit would prevail, and the city retain an experienced and faithful servant. But to remove an incumbent without a hearing because the appointing officers had determined to reduce the salary of the office, would be to defeat absolutely the plain purpose and intent of the law.

The decision of this case, therefore, rests on the determination of

the question whether there has been an honest and substantial abolition of the office, or whether there has been merely a change of names and a devolution of the duties of the office upon a new appointee. So far as there is any conflict in the facts of the case upon this motion, those stated in the opposing affidavits must be taken as true. (*People ex rel. Port Chester Savings Bank* v. *Cromwell*, 102 N. Y. 477; Code Civ. Proc. § 2070.)

By the resolution of the common council, the duties of the relator were, after his discharge, to be performed by Eugene Martyn, a teacher of the said home.

The relator swears that his duties were as follows : " It was my duty to make requisition for supplies for said home, and these were furnished through the department of city works under contracts made by that department; I received all supplies and certified to that department the correctness of all bills for the same; I also certified to the monthly pay roll of the institution, which contained the names of the employees of the home, and the sums due each for their work; there was a teacher in said home named Eugene Martyn, and an assistant teacher ; these two teachers were appointed by the common council of the city of Brooklyn; the other employees of the said home are enumerated in a schedule hereto annexed and marked ' A,' and these latter were employed by me under the direction of the committee of the common council having the matter of the home in charge.

" I directed and superintended the labors of all employees, except the teacher and assistant teacher, and even these latter reported to me at their coming and going. I was in general charge and custody of the home and its inmates."

He further swears: " Since my departure from said institution, John Eiseman has entered said home and has performed that part of my duties which consisted in the general charge of the inmates and employees of the said home, which is by far the largest part of said duties, while Eugene Martyn, said teacher, has done that part which consisted of making requisitions for supplies, receipting for the same and certifying bills and pay rolls."

Eugene Martyn swears : " That the statement in the relator's affidavit, contained on the 4th page thereof, ' that on the 9th day of May, 1895, John Eiseman was appointed by the common council in

place of said relator, and is now performing the duties formerly performed by him,' is untrue ; deponent says that during the superintendency of the said Corrigan that the duties that would naturally devolve upon a janitor of the institution were rarely, if ever, performed by the said superintendent ; that the work may have been done under his direction, but was usually performed by the laborers or the boys ; that the only work the superintendent did during his superintendency was the making of requisitions for supplies, certifying to the monthly pay rolls of the institution and the hiring of domestic servants ; that after the discharge of the said relator, pursuant to the resolution of the common council, as set forth in affidavit of said relator, the aforesaid duties devolved upon deponent and have ever since said time been performed by deponent."

Henry Vollmer, a member of the common council, swears : " That the statement in the relator's affidavit, contained on the 4th page thereof, ' that on the 9th day of May, 1895, John Eiseman was appointed by the common council in place of said relator, and is now performing the duties formerly performed by him,' is untrue ; deponent says that during the superintendency of the said Corrigan that the duties that would naturally devolve upon a janitor of the institution were rarely, if ever, performed by the said superintendent ; that the work may have been done under his direction, but was usually performed by the laborers or the boys ; that the only work the superintendent did during his superintendency was the making of requisitions for supplies, certifying to the monthly pay rolls of the institution and the hiring of domestic servants ; that after the discharge of the said relator, pursuant to the resolution of the common council, as set forth in affidavit of said relator, the aforesaid duties devolved upon deponent, and have ever since said time been performed by deponent."

It will be observed that the quotations from the affidavits of Martyn and Vollmer are almost identical in language, and that each swears he is performing the duties performed by the relator during his incumbency of the office. Of course both affidavits cannot be true, as one expressly contradicts the other, and if I was permitted to determine the facts of the case, I should reject both of them.

Martyn's affidavit is, however, consistent with the resolution of the common council which devolved the duties of the office upon him, and

the relator does not deny that a part of the duties of the office formerly held by him are now performed by Martyn.    But there is no substantial contradiction that the relator was the janitor of the home.    It is conceded that the duties now performed by Eiseman were performed under the direction of the relator.    He was originally designated keeper of the home.    Afterwards he became known as superintendent, and it is not denied that he had general charge of the institution, and that the duties of janitor were within his office.    The common council could have devolved some of his duties on subordinate officers, or divided them and given a portion to a new appointee, but as long as the relator was willing to perform any part of the duties originally belonging to the office at such salary as the common council should fix, he was protected from removal, except for cause and after a hearing.    Such construction only will give due effect to the intent of the law.    The relator is entitled to be reinstated as janitor, and an order may be entered accordingly.