PEOPLE ex rel. BUFFALO PAVING CO. v. MOONEY et al.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

STREET IMPROVEMENTS—CONTRACTS—DISCRETION OF BOARD OF PUBLIC WORKS.
   Buffalo City Charter, as amended by Laws 1891, c. 105, provides that the board of public works shall have charge and control of all street improvements; that, when any improvement is necessary or advisable, the board may recommend it to the council, which may order it done; that the council may order any improvement, with or without the recommendation of the board, but when such improvement is ordered in accordance with plans, etc., a contract therefor shall be made by the board, except where it is authorized to do the work itself; and that all improvements ordered shall be under the direction and supervision of the board. *Held*, that where the council let to the lowest bidder the paving of a street recommended by the board, and directed the board to make a contract therefor with such bidder, the board had a discretionary power, under the proper exercise of which it could refuse to make the contract.

Appeal from special term, Erie county.

Application of the Buffalo Paving Company for mandamus to James Mooney and others, constituting the board of public works of the city of Buffalo. From an order directing that a writ issue, commanding defendants to execute and deliver to relator a contract for paving, defendants appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

James L. Quackenbush, for appellants.
Emory P. Close, for respondent.

ADAMS, J.   The charter of the city of Buffalo was subjected to a general revision by the legislature of this state in 1891, and, so far as material to the issues involved in this proceeding, its various provisions will be found in chapter 105 of the Laws of that year.   Chapter 1 of title 10 of the revised charter creates a department of public works, to consist of three commissioners, whose duties and powers are clearly defined.   Section 271 provides:

"That the board of public works shall have charge and control: (1) * * * (2) * * * (3) Of locating, laying out, opening, constructing, altering, regulating, grading, regrading, paving, repaving, guttering, repairing, cleaning, sweeping, and sprinkling all streets, avenues, places, alleys, and roads (except such as are placed in charge of the park commissioners)."

And by section 272 it is further provided:

"When any work or improvement, general or local, prescribed in this title, is necessary or advisable, the board may recommend the same to the common council, with or without plans, specifications and descriptions.   The common council may thereupon order the work done, or may order that plans, specifications and descriptions shall be furnished with or without estimates of costs or bids from responsible parties who will contract with the city to do the prescribed work.   The common council may order any work or improvement either with or without the recommendation of the board of public works, but when such work or improvement is ordered in accordance with plans, specifications or descriptions, a contract therefor shall be made by the board, except where it is authorized to do the work itself.   All work and improvements ordered shall be under the direction and supervision of the board, and when it shall make report to the common council of its action, the council shall provide for the payment therefor, either from the general fund, or by local assessment, or both, as in this act prescribed.   And no such work shall be executed until payment therefor has been provided as required by this act.   It shall make a special report of any work done or contracted for, when required by the common council or mayor, and a general monthly report to the common council of its transactions for the previous month."

It appears from the undisputed facts of this case that the defendants, who constituted the board of public works of the city of Buffalo, duly recommended to the common council that Roesch avenue, in that city, should be paved with American bituminous rock pavement; and such proceedings were thereupon had, in conformity to the various requirements of the charter, that the work was let to the relator for the sum named in its bid, to wit, $27,543, and the defendants were directed to enter into a contract with the relator for the performance of such work; but in the exercise of a discretionary power which, they insist, resides in their board, they have failed to comply with such direction, for reasons which are more particularly set forth in their opposing affidavits.   The first question, therefore, which is presented for our consideration, is whether or not the charter of the city of Buffalo invests its board of public works with any discretionary power to act in this matter in disregard of the direction of the common council.   A brief examination of such of the provisions of that instrument as have been already referred to

will, we think, remove whatever doubt arises as to the power which the legislature intended to confer upon this department of the municipality, and will also make plain the limits sought to be imposed upon its exercise. By the language of section 271, it seems that the board of public works have charge and control of locating, paving, and repaving all streets, except such as are placed in charge of the park commissioners; and the fair import of this language is that it shall exercise a supervisory power and control over the various improvements and work specified,—that is, it shall ascertain, and, to a certain extent, determine, when any public work is necessary, and shall see to it that, when directed by the common council, it shall be performed in such manner as may best meet the requirements of the city and its citizens; and, in cases where the expense of such work does not exceed the sum of $500, it would also seem, by the provisions of section 283, that the board is a law unto itself, and may require its performance without first obtaining the sanction of the common council; but, on the other hand, this section expressly prohibits it from incurring any expenditure, or entering into any contract, involving or exceeding that sum, unless the consent of that body is first obtained. Thus it will be seen that the right of independent action upon the part of the board is somewhat circumscribed, and a further reference to section 272 will show quite conclusively that its authority, generally speaking, is subsidiary to that of the common council. When it deems any public work on the streets necessary, it may recommend the same to the common council, with or without plans, and the latter body may then, in the exercise of its discretion, approve or disapprove of such recommendation; and the common council may also direct the performance of any public work or improvement without the recommendation of the board of public works; but when any such work or improvement is ordered in accordance with plans, specifications, or descriptions, "a contract therefor shall be made by the board, except where it is authorized to do the work itself." And the portion of the section here quoted from is followed by a provision that all work and improvements ordered shall be done under the direction and supervision of the board. This language seems capable of but one construction, and that is that the common council is invested by the city charter with exclusive authority and control in the matter of directing all public work and improvements, save in the cases provided for by section 283, while, as has already been shown, the duty imposed upon the board of public works is, in the main, supervisory in its nature. But, with this conclusion established, it by no means follows that the latter body is utterly divested of all discretionary power; for, in a certain and limited sense, this is not so. The charter, it is true, directs that when the common council orders certain work or improvement in accordance with plans, specifications, or descriptions, a contract therefor shall be made by the board; but it is conceivable that after a public improvement is thus ordered, and before a contract is entered into, there might occur such a change in the condition of affairs as to render it plainly impoli-

tic, and contrary to the best interests of the municipality, whose servants the commissioners of public works are, to proceed with the same, and can it be claimed that in such an emergency they would be deprived of all discretionary power? This proceeding furnishes an apt illustration of the idea sought to be advanced. The application for a peremptory writ of mandamus is met by opposing affidavits, the contents of which, in the circumstances of the case, must be accepted as true. People v. Cromwell, 102 N. Y. 477, 7 N. E. 413; People v. Brush, 146 N. Y. 60, 40 N. E. 502. And these affidavits show that since the adoption of the resolution by the common council the fact has been brought to the attention of the board of public works that Roesch avenue is quite likely to be soon converted into a boulevard, and made a part of the park system of the city, in which event it is made to appear that the paving thereof under the existing resolution would be useless, and would involve the city in great loss, and that, even if the contract were executed, the relator could not proceed with the work until the month of May, next, before which time, we are led to infer, it can be definitely determined whether or not the contemplated change is to take place. This condition of affairs certainly demanded some action upon the part of either the common council, or the board of public works. It would seem, therefore, to require no argument to justify the commissioners in taking the position they did, and using every precaution which was available to prevent the unnecessary expenditure of public moneys; and their action in the premises was but the exercise of the right of judgment in a case somewhat exceptional in its circumstances, but nevertheless one in which such right must necessarily exist. This justification is the more readily accepted in this case for the reason that the refusal of the board to enter into a contract with the relator can in no wise operate to the prejudice of the latter. Indeed, it is more than doubtful whether it may resort to the remedy invoked for the protection of its interests; for, if it is able to establish a clear legal right to the contract in question, it has an adequate remedy at law, by action against the city to recover damages, while, if such right is not clear, a writ of mandamus is not available. People v. Campbell, 72 N. Y. 496; Lord v. Thomas, 64 N. Y. 107; People v. Aldridge, 83 Hun, 279, 31 N. Y. Supp. 920. The views here expressed lead to a reversal of the order appealed from, and a dismissal of the writ.

Order reversed and writ dismissed, with $50 costs and disbursements. All concur, except WARD, J., not voting.