(17 Misc. Rep. 672)

In re KLINE et al.

(Supreme Court, Special Term, Albany County. May, 1896.)

ELECTIONS AND VOTERS—STATEMENT BY INSPECTORS—POWER TO CHANGE.

Laws 1892, c. 680, § 115, provides that on the completion of the canvass the inspectors shall make and sign a statement showing the date of the election, the number of the district, the town or ward and the county in which it was held, the whole number of ballots for each office, the whole number for each candidate, and the whole number of ballots objected to because marked for identification, and that all ballots objected to as marked for identification shall be attached to the statement. *Held* that, when the inspectors have made and signed such statement, they are functus officio as a board, and cannot afterwards change the statement, nor has the board of canvassers power to order them to change it.

Application by De Witt Kline and George M. Hollenbeck, for a writ of mandamus to compel Edward H. Head and others, constituting the town board of canvassers of the town of Rensselaerville, Albany county, to reconvene, and recount the ballots cast for the offices of town clerk and supervisor in the First election district of said town. Denied.

Norton Chase, for petitioners.
J. Sheldon Frost and Eugene Burlingame, opposed.

CHESTER, J. The petitioners were Democratic candidates for the offices of town clerk and supervisor, respectively, at the annual election for town offices held in the town of Rensselaerville, Albany county, on the 14th day of April, 1896. They have applied here for a peremptory writ of mandamus to Edward H. Head, Charles Radick, Lewis Kenyon, Hobart Poultney, and Henry Whitbeck, constituting the town board of canvassers of that town at such election, directing them to forthwith reconvene, and recount the ballots cast for the offices of town clerk and supervisor in the First election district of said town at such election, and directing them not to count seven ballots described in the petition, and attached to the certificate of canvass returned to said board of town canvassers by the inspectors of election of said First election district, and indorsed, "Marked for the purpose of identification," each of which seven ballots has the cross mark X within the circle over the Republican ticket, and each of which has some name written upon it or other mark, which it is alleged renders it defective. With the moving papers are affidavits made by two inspectors, two watchers, and a poll clerk, in which each states "that during

the canvass of the votes he declared his belief that the seven ballots described in the petition for the writ of mandamus had been marked for the purpose of identification." One of these affidavits was made by Charles B. Cross, claiming to be a Democratic watcher. In the answering affidavits there is presented the affidavit of Thomas R. Chadwick, who states that he was one of the Republican watchers, and that Nathaniel Teed was the other Republican watcher, and that Edwin Shultes and Alvan Yeomans were the Democratic watchers. In this affidavit it is stated that the polls were closed at sundown, and the canvass of the votes by the inspectors commenced immediately thereafter; that in the canvass of the ballots the inspectors first ascertained the whole number of ballots cast, and found they agreed with the poll list, the same being 215, and no more; that the inspectors then examined all of the ballots, to determine the number of votes cast for the candidates for the office of supervisor, and it was found on such canvass that the total number of ballots cast for the office of supervisor was 215, of which Abram S. Coons received 133, and George M. Hollenbeck 74, 2 blank and 6 defective ballots, making 8 blank and defective ballots, which were not counted; that the inspectors proceeded to canvass the number of ballots cast for town clerk, and found that the whole number of ballots cast for that office was 215, and no more, of which De Witt Kline received 69 and William Hahn 138, 2 blank ballots and 6 defective ballots, which were not counted; that in like manner the inspectors canvassed the ballots cast for the various other town offices, and when the canvassers had proceeded to ascertain the number of ballots cast for the office of constable a discussion arose as to whether certain ballots had been marked for the purpose of identification; and then follows in the affidavit this statement:

"Mr. Charles Cross, who was then and there present, he not being an inspector, ballot clerk, poll clerk, watcher, or other election officer, claimed that certain ballots had been marked for identification, and objected to their being canvassed, but no inspector of election, watcher, or other election officer, during the canvass of the votes, or immediately after the completion thereof, or at any time that day or night, made any statement that any particular ballot or ballots had been written or marked in any way for the purpose of identification, or declared his belief that any particular ballot or ballots had been written on or marked in any way for the purpose of identification, and neither the inspectors of election nor any nor either of them made any indorsement upon either or any of the ballots canvassed, in substance or to the effect, 'Objected to, because marked for identification,' and no ballots whatever were attached to the statement of the result of the canvass made out and signed by the inspectors of that district at the close of such canvass on said 14th day of April, 1896; that Lewis Kenyon and Pierce Craw acted as clerks for the inspectors in filling out the return or statement of the result of such canvass, and as the inspectors declared the result of the canvass for the various offices, commencing with the supervisor and in the order in which the names appeared upon the ticket, they filled in the statement or return the names of the persons voted for at said poll for the respective offices, and the total number of votes cast, and the number cast for each of the candidates, and that they had thus filled out the return or statement of the canvass, commencing with supervisor and following the other candidates in their order down to that of constable, when the questions above mentioned were raised; that when the canvass

of the ballots had been completed, and the result as to each of the candidates in that district ascertained by the inspectors, the return or statement showing the result as ascertained and declared by the inspectors was signed by each of the four inspectors, but no ballots whatever were attached to such statement or return. Such statement of the canvass or return after being signed, but with no ballots affixed or attached thereto, was left in the custody of Adelbert Hood, one of the inspectors, and the board of inspectors adjourned about ten o'clock in the evening of April 14th, aforesaid."

The above statement of facts in the affidavit of Mr. Chadwick with reference to the occurrences at the time of canvassing the votes is corroborated by affidavits of Adelbert Hood and David L. Sullivan, who were inspectors of election, by Lewis Kenyon, a member of the town board, and by Nathaniel Teed, a watcher. It is not necessary upon this motion to determine the truth as to whether or not Charles Cross, or Charles B. Cross, who, I assume, is one and the same person, was or was not an election officer, or whether or not it is true that during the canvass of votes or immediately after the completion thereof an inspector of election or other election officer or duly-authorized watcher declared his belief that any particular ballot had been written upon or marked in any way for the purpose of identification, so as to bring the case within section 114 of the election law (chapter 680, Laws 1892, as amended by chapter 810, Laws 1895). It is sufficient to say that these answering affidavits raise an issue with reference to material facts alleged in the petition, and for that reason a peremptory writ of mandamus cannot issue. Code Civ. Proc. § 2070; People v. Cromwell, 102 N. Y. 477, 7 N. E. 413; People v. Rome, W. & O. R. R. Co., 103 N. Y. 95, 8 N. E. 369. But it is claimed here that what is alleged to be the original certified statement of the result of the canvass which is before the court, and which has attached to it the seven ballots in question, indorsed by the inspectors as having been objected to because marked for identification, cannot be impeached or attacked collaterally. It seems to me that the answer to this claim is that the seven ballots in question form no part of the original certified statement, and are improperly and unlawfully attached thereto. There is substantially no dispute about the facts with reference to the making of the statement, and the time at which the ballots in question were annexed thereto. It appears that the statement of the canvass was made up and that all four of the inspectors signed it immediately after the completion of the canvass on the evening of the 14th. At the time the statement was so signed there were no ballots whatever attached thereto. Upon its being so signed, it was left in the custody of Adelbert Hood, one of the inspectors. The board of town canvassers met on the following day, at about 1 o'clock in the afternoon, at the village of Preston Hollow, which is about eight miles from Rensselaerville, where the polling place in the First election district was located. Mr. Hood appeared before the board, and presented the statement to them, it having at that time no ballots attached thereto. He also produced eight ballots, claimed to be the ones as to which question had been made by Mr. Cross on the previous evening before the board of inspectors. The ballots so produced

table, and handled promiscuously by the members of the board and others who were present. During the meeting of the town board of canvassers a member raised a question as to the whole number of votes cast for constables and inspectors in the First district, the statement showing the number of votes cast for each of the candidates for these respective offices, but not containing a statement of the total number of votes cast for each of these offices. There was also some discussion had with regard to the omission from the statement of ballots of the kind voted in the district. A member of the town board moved that the return be sent back to the board of inspectors for correction, and that was agreed to. On the evening of the same day, at about 8 o'clock, the inspectors convened again at Rensselaerville, and Mr. Hood presented to them the statement of the canvass, and also produced the eight ballots, which he stated were the same as those he had exhibited before the town board on that day. There were about 25 or 30 persons in the room at the time. The ballots in question were handled and examined, not only by the inspectors, but by numerous bystanders. At that time the Republican inspectors tried to have the Democratic inspectors agree to correct the returns or statement of the canvass by inserting the whole number of votes cast for constables and inspectors in accordance with the criticism made by the town board, but the Democratic inspectors refused to make any corrections unless there should be a recanvass of the whole vote. Mr. Sullivan, one of the inspectors, claimed that he had preserved all the ballots that had been canvassed the previous day in that district, except those claimed to have been preserved by Mr. Hood, but the Republican inspectors would not make a recanvass of the ballots. No correction was made in the return, and no ballots whatever were affixed thereto that evening. The following day the town board met again at Preston Hollow at about 1 o'clock in the afternoon. Mr. Hood again produced the statement of the canvass, and no ballots were affixed to it at that time. He also produced eight ballots, which he claimed to be the same ones previously produced. The town board did not canvass or declare any result of the election on that day, and the returns from the First district were again left in the custody of Mr. Hood. The inspectors of election got together again that evening, April 16th, at Rensselaerville, with about 15 or 20 persons in the room with them. Mr. Hood again produced the statement, and also the eight ballots, which he claimed were the same ones previously produced. The eight ballots were placed upon the table, and were handled and examined by various persons other than the inspectors, some of whom were not election officers. At about half past 9 o'clock on that evening the inspectors made the indorsements now appearing upon the ballots affixed to the statement. This indorsement upon each ballot is as follows: "Objected to, because marked for identification. This ballot was counted"; and each of the four inspectors then signed his name to the indorsements. The ballots were then pinned upon the return. No indorsement was made upon these ballots until the time stated, and no ballots whatever were affixed

or attached to the statement of the canvass until that time, which was two days after the close of the canvass, and after the statement had been signed by all the inspectors, and certified by them as being in all respects correct. The next day, April 17th, the board of town canvassers again met at Preston Hollow, and the statement as it now appears was presented from the First district, and was canvassed by the board, and a certificate of the result delivered to the town clerk.

There is no claim that there has been at any time any change in the statement of the number of votes cast for any candidate or for either of the candidates affected by questions presented here, since the statement or return was first made and signed by the inspectors. The law provides that upon the completion of the canvass the inspectors shall make and sign a written statement thereof, showing the date of the election, the number of the district, the town or ward and the county in which it was held, the whole number of ballots received for each office, the whole number cast for each person for such office, and the whole number of ballots objected to because marked for identification, written out at length in words, and at the end thereof a certificate, signed by the inspectors, to the effect that the statement is in all respects correct. Election Law, § 115 (Laws 1892, c. 680). The section also provides that the inspectors shall also securely attach to such statement all ballots objected to as marked for identification, and that forthwith upon the completion of such certified statement and the proclamation of the result all ballots voted and not required to be attached to such certified statement shall be destroyed. Id. It is undisputed here that the seven ballots in question were not indorsed "during a canvass of the votes or immediately after the completion thereof," and it is undisputed that the statement required by law to be made upon the completion of the canvass, and which was made at that time, and certified by all the inspectors to be in all respects correct, did not then have these ballots affixed thereto. The ballots in question had been counted by the concurrence of all the inspectors, and included in the result. It was their duty, under the law, to have destroyed them. When the inspectors had made and signed the statement, their duties had been fully discharged, and they became functus officio, as a board. People v. Reardon, 49 Hun, 425, at page 430, 3 N. Y. Supp. 560; People v. County Board of Canvassers of Albany Co., 46 Hun, 390. The case last cited was one where the inspectors, at the close of the canvass, made a statement of the result respecting the votes cast for the office of senator. Two days thereafter two of the inspectors made what purported to be another statement, with a changed result. Mr. Justice Landon, in writing the opinion of the court in that case, said (page 392):

"This change of determination and statement was not within their power or jurisdiction to make, and was wholly invalid as an efficient and legal change of their first determination and statement. The law contemplates that the duties of the inspectors shall, in these respects, be as promptly performed as possible, for this purpose, among others: that the result may be determined and declared without any bias arising from a knowledge of its effect upon the aggregate result, or from exposure to subsequent in-

fluences. Like the verdict of a jury, when once regularly delivered, the jurors themselves cannot overthrow or defeat it."

So here I think it was not lawful for the inspectors to again get together and assume to act as a board two days after they had completed their work, and make the indorsements upon the ballots in question, and affix them to the statement. Nor did these acts on their part, in my opinion, have the effect of making the attached ballots any part of the statement of the result. The case is very like, in some respects, that of People v. County Canvassers, 66 Hun, 265, 21 N. Y. Supp. 279. Mr. Justice Herrick, in writing an opinion in that case at special term, which was adopted by the general term in this department, uses this language (page 272, 66 Hun, and page 281, 21 N. Y. Supp.):

"It appears that since the proceedings were commenced the chairman of the board of inspectors in each of said districts, by permission of the board of canvassers, attached to the statement of canvass theretofore filed with the board ballots of the kind in question, alleged to have been marked for identification, and indorsed thereon, in substance, that they 'were returned as objected to because marked for identification.' There had been no meeting of the several boards of inspectors authorizing any such action to be taken, and it appears to have been the individual action of the chairman. As we have seen, the affidavits showed that the ballots were not marked during the canvass, or immediately thereafter, as objected to because marked for identification, or with that in substance. That was the only time when such action could be legally taken. The proceeding was wrong. There is no authority in law for it. A single inspector cannot act for the whole board, and under the facts as they now appear the board itself would have no right to do what a single member of it has assumed to do. The alleged marked ballots so attached to the statements of result, since they were originally filed, must be removed from such statements before being canvassed by the board of canvassers."

It appears here clearly that after the polls were closed, and during the canvass of the votes, and for two days thereafter, at the meetings of the town board, and at the time when the inspectors convened, persons other than those authorized by law handled the ballots in question. It would seem that after this promiscuous handling, and after the lapse of two days, it would be a dangerous precedent to hold that the inspectors could then properly do what they have assumed to do in this case, and that it would be taking away one of the most important safeguards intended to be thrown around the suffrage by the ballot law. Nor do I think the board of town canvassers had the right, under the law, to send this statement back to the inspectors for the purpose of having these ballots affixed. The petitioners here ask for a mandamus to the persons constituting the town board, directing them to reconvene, and recount the ballots cast for the offices of town clerk and supervisor in the First election district, and directing them on such recount to reject the seven ballots in question. It was not the duty of the canvassing board of the town, nor had they the power, under the law, to reject the ballots in question. Their duties were ministerial. They were charged by law simply with canvassing the returns from the various election districts, and ascertaining the result shown by the returns. This they did. Not having violated any duty imposed upon them by law, a mandamus cannot issue against

them commanding them to do something that they were not law-
fully bound to do, and which would have been unlawful for them
to do.

The application is therefore denied, with costs.