In the Matter of the Petition of MAX WEISSMAN, Respondent, for an Inspection and Examination of the Books and Records of DREYFUSS COSTUME CORPORATION.

DAVID A. DREYFUSS and Others, Appellants.

First Department, November 18, 1921.

Corporations — peremptory writ of mandamus for examination of general books and documents of corporation and appraisal of its assets will not issue where there is irreconcilable conflict between moving and opposing affidavits — demand by relator for peremptory writ equivalent to demurrer where moving and opposing affidavits conflict.

A peremptory writ of mandamus will not issue directing an examination of all books and documents of a corporation and an appraisal of its assets by a stockholder, where there is an irreconcilable conflict between the moving and opposing affidavits, and where, if the opposing affidavits are

to be credited, the petitioner already has had a full and complete examination of the books, papers and assets of the corporation.

Where, upon a motion for a peremptory writ of mandamus, opposing affidavits are read which are in conflict with the averments in the affidavits of the relator and, notwithstanding this, the relator demands a peremptory writ, such demand is equivalent to a demurrer and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true.

APPEAL by David A. Dreyfuss and others from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of May, 1921, granting a peremptory writ of mandamus directing an examination of all books and documents of the Dreyfuss Costume Corporation and an appraisal of all its assets.

*Louis E. Felix*, for the appellants.

*Walter S. Doernberg*, for the respondent.

DOWLING, J.:

This is an appeal from an order granting a peremptory writ of mandamus for the examination and inspection of the books and papers of the Dreyfuss Costume Corporation (hereinafter referred to as the corporation) and of the merchandise, fixtures and other assets thereof, to be had by the petitioner with a certified public accountant or his assistant.

The petition on which the writ was granted alleges that the corporation was organized October 21, 1919, under the name of David A. Dreyfuss, Inc., with ·a capital stock of ·$100,000 consisting of 1,000 shares of the par value of $100 each. On December 31, 1919, the name of the corporation was changed to the Dreyfuss Costume Corporation. It has been engaged in the dress business since November, 1919, and has its principal place ·of business at 16 East Thirty-third street, New York city. Pursuant to an agreement dated November 14, 1919, petitioner invested $5,000 in the corporation and became the owner and holder of 50 shares ·of its capital stock. At the same time one Martin M. Kahn invested $25,000 and became the owner and holder of 250 shares of the capital stock of the corporation. Under the terms of this agreement, to which the corporation and David A. Dreyfuss, its president,

were parties, the individual parties thereto were given a probationary period of seven months from December 1, 1919, to decide whether they could successfully carry on the business of the corporation; Kahn and petitioner had the privilege of electing whether they would continue in the business of the corporation, and if either should decide to withdraw, upon the giving of the notice provided for in said agreement (which notice was to be given on or before May 1, 1920), the corporation agreed to repurchase the stock and pay to each the sum paid therefor, plus the profits, if any, earned by it. Dreyfuss guaranteed the repayment of the sums invested, plus the profits earned. Under this agreement, also, Dreyfuss was to receive an annual salary of $12,000 as director and officer of the corporation; Kahn, an annual salary of $2,600 as salesman; and petitioner, as manager of the manufacturing department of the corporation, was to be paid $6,500 per annum, of which $62.50 was to be paid weekly and the balance on the termination of the agreement. The agreement also provided that should the said individuals continue with the corporation after July 1, 1920, they were to be elected directors and officers of the corporation, and an adjustment of salaries was then to be had. Kahn severed his connection with the corporation in June, 1920, and his stock was repurchased by Dreyfuss at its par value, without any profits. Petitioner continued with the corporation until January, 1921, when as he alleges Dreyfuss directed him to leave the premises and the employ of the corporation.

About January 1, 1921, Dreyfuss offered to purchase petitioner's stock in the corporation for the sum of $5,300. Before accepting such offer, petitioner desired to find out the actual value of said stock and for the purpose of determining the same, sought an examination and inspection of the books of accounts, records and papers of the corporation. Formal demand was made upon the corporation and its treasurer for a statement under oath of its affairs, followed by interviews between petitioner's attorney and the attorney for the appellants, resulting in a statement prepared by the corporation's accountants containing a balance sheet of the corporation as of December 31, 1920, showing capital stock and surplus $102,709.45, a duplicate of which, verified by the

treasurer of the corporation, was served on petitioner's attorney on February 14, 1921. This statement, the petitioner claims, does not correctly set forth the true assets and liabilities of the corporation, and in support of such contention alleges statements to him by the president of the corporation of large profits made by the corporation, and statements furnished by it to fire insurance companies in connection with the adjustment of a fire loss sustained by it in the spring of 1920, as well as statements furnished to mercantile agencies. It is averred that in order to determine the facts surrounding the affairs of the corporation, petitioner will require an examination and appraisal of the merchandise in the corporation's place of business, together with that now in the hands of the contractors. Written demand was made upon the corporation and its secretary for permission to make such an examination with the aid of an accountant and of petitioner's attorney, of all the books of account, records and papers of the corporation, which demand was never complied with. Petitioner claims to have been kept in ignorance of the affairs of the corporation and that no statement, other than the one above referred to, has been furnished to him and that all information and access to the books have been denied to petitioner.

He also charges that excessive salaries are being paid to David A. Dreyfuss and his son, Travers H. Dreyfuss; that they are mismanaging the business and conducting it for their own benefit, and that he is informed (without stating the source of his information) they have been using the moneys of the corporation for their personal use and entertainment, and that loans of its money have been made to David A. Dreyfuss personally. He charges that exorbitant expenses have been paid, salaries paid without a return in services and assets inventoried below their value.

He alleges that because of the proposition to purchase his stock, the manner in which the affairs of the corporation have been conducted and the failure to give him ample information of all its affairs, it is essential that he should possess himself of such knowledge as will place him on an equality with the other stockholders.

There is a supporting affidavit by petitioner's attorney.

The answering affidavit of David A. Dreyfuss, president

of the corporation, denies any irregularity in connection with the change of name of the corporation, as charged in the moving papers, and further denies that he asked petitioner to leave the corporation's premises in January, 1921. He avers that prior thereto petitioner was listless and neglected his duties, not arriving at the place of business until an hour and a half after opening time, absenting himself for long periods without giving any explanation therefor, quarreled with all the employees and threatened to leave unless some of them were discharged and he given full power to discharge any employee he saw fit. Finally Dreyfuss told the petitioner that he could not run the entire corporation, whereupon petitioner said that unless he immediately repurchased the stock from him, he (petitioner) would make it unpleasant for Dreyfuss. He admits offering to buy the petitioner's stock for $5,300, and says he withdrew the offer because of threats by the petitioner. He alleges that petitioner had access to the corporation's books and was from time to time shown statements and informed of the condition of the company's affairs, and that petitioner gave more time and attention to keeping himself informed about the corporation's finances than he gave to his own duties. He says that permission given to petitioner's attorney to examine the books was not refused until after it was learned that petitioner was employed by a competitor and that he wanted the inspection in the presence of unknown persons. It is claimed the notices for a desired examination of the books were given as part of a plan to annoy Dreyfuss. It is further averred that petitioner, by threats, sought to compel the repurchase of the stock at $7,000 or $8,000. Dreyfuss swears that the financial statement furnished to petitioner is correct. He admits making statements as to the paper profits of the corporation, but claims that such profits were wiped out by the fire and the drop in the market in October, November and December, 1920, and denies that the figures are low in comparison with those furnished to mercantile agencies.

He says that he was at all times ready and willing to render whatever assistance petitioner or his attorney was entitled to, as far as looking over the books and checking up the inventory was concerned, and that petitioner himself kept

the cost books and cost of materials, gave orders for merchandise and knew exactly what stock was carried on the premises. He charges that petitioner carried away the cost books, and that petitioner himself prepared the inventories given to the insurance companies in connection with the fire loss. He avers that the books of the corporation were audited each month by certified public accountants and monthly statements rendered which were shown to petitioner and kept in the office of the company and which were accessible to him at all times, and some of which he removed from the files and never returned. He claims that when Kahn withdrew, an examination of the books by Kahn's accountants showed that he was not entitled to any profits, because none had been earned.

The petitioner is charged with bad faith, in that the petition is made for the purpose of harassing and annoying Dreyfuss and as part of a scheme to compel the purchase of petitioner's stock at an excessive price. It is alleged that petitioner is now employed by a concern engaged in a similar business to that of the appellants and that the attempt to reappraise the dresses is for the purpose of revealing appellants' business, and the models and designs of their dresses to competitors.

He denies that the corporation is mismanaged, and says that the salaries paid to himself and his son are reasonable compared with the value of the services rendered, and he further denies that any money of the corporation is used for their personal use and entertainment.

There is a supporting affidavit by a member of the firm of certified public accountants, which prepared the statement furnished to petitioner as to its correctness in every respect. There are also affidavits by Travers H. Dreyfuss, secretary and a director of the corporation, by a bookkeeper employed by it, by its stock clerk, the employee in charge of giving out material to contractors, and by the attorney for the corporation.

There are many exhibits made a part of the record.

Practically every allegation of the moving papers is denied by the answering affidavits, except the petitioner's ownership of stock, the offer to purchase the same from him for $5,300,

First Department, November, 1921. [Vol. 198

and the refusal to give him the right to further examination of the books after he had full and complete access thereto, of which it is claimed he made the fullest use to verify the accountant's audit furnished to him. His good faith is attacked and it is claimed he seeks the examination in question solely to benefit the competitor into whose employ he has entered. Where there is such an irreconcilable conflict between the affidavits, and where, if the appellants' proof is to be credited, the respondent has already had a full and complete examination and inspection of the books, papers and assets of the corporation, a peremptory writ of mandamus should not issue. (Code Civ. Proc. § 2070.) As was said in *People ex rel. Giles* v. *Klauder-Weldon Dyeing Machine Co.* (180 App. Div. 149): " ' Where, upon motion for a mandamus, opposing affidavits are read which are in conflict with the averments in the affidavits of the relator, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true.' (*People ex rel. Corrigan* v. *Mayor, etc.*, 149 N. Y. 223; *Matter of Haebler* v. *N. Y. Produce Exchange*, Id. 414.)"

As was said in *People ex rel. Port Chester Savings Bank* v. *Cromwell* (102 N. Y. 477, 481): " In the consideration of this appeal the defendant is entitled to have the facts determined in accordance with the relation thereof, contained in his opposing affidavits. The statements of the affidavits are conflicting, and as the relator, notwithstanding that fact, still demanded a peremptory mandamus, it could only be granted upon the assumption that there were no disputed facts. Its action was equivalent to a demurrer to the case presented by the opposing affidavits, and the question thus presented must be determined upon the assumption of their truth."

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the writ dismissed, with fifty dollars costs.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and writ dismissed, with fifty dollars costs.