(82 Misc. Rep. 63.)

### WESTERN NEW YORK INSTITUTION FOR DEAF MUTES v. BROOME COUNTY.

(Supreme Court, Trial Term, Monroe County.   August, 1913.)

1. STATUTES (§ 161*)—REPEAL—ACT RELATING TO SAME SUBJECT.

   Since Education Law 1909, § 2000, reproduced without change in Education Law 1910 (Consol. Laws 1910, c. 16) § 1190, contains a schedule of all acts intended to be thereby repealed, the fact that an act is not mentioned therein evidences the intention of the Legislature to leave such act undisturbed, and, unless it is utterly inconsistent with the act, it will not be repealed thereby.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 230–234; Dec. Dig. § 161.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 2*)—STATUTES—REPEAL—IMPLIED REPEAL.

   Since, under General Construction Law (Consol. Laws 1909, c. 22) § 95, the provisions of a law repealing a prior law, which are substantially re-enactments of provisions of the prior laws, shall be construed as a continuation of such prior laws, the Education Laws of 1909 and 1910 (Consol. Laws 1910, c. 16) were simply a continuation of the statutes which it repealed, and, since Laws 1876, c. 331, granting a charter to the Western New York Institution for Deaf Mutes, was not inconsistent with such prior statutes, it is not inconsistent with the Education Law and, therefore, not impliedly repealed thereby.

   [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 2;   Dec. Dig. § 2.*]

3. COUNTIES (§ 222*)—CLAIMS AGAINST COUNTY—PLEADING—"AUDIT."

   An allegation that the board of supervisors "refused to audit" a claim is equivalent to an allegation that the supervisors refused to pass upon the claim or in any manner exercise their judicial functions in relation thereto, since "audit" means to examine and allow or disallow.

   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 355–359; Dec. Dig. § 222.*

   For other definitions, see Words and Phrases, vol. 1, pp. 639–642.]

4. PLEADING (§ 214*)—ADMISSIONS ON DEMURRER.

   A demurrer admits the truth of a statement in a pleading attacked, and words, in the absence of something clearly indicating the contrary, are to be given their exact and legal meaning.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

5. COUNTIES (§ 206*)—ACTION—LIQUIDATED CLAIM.

   An action at law can be maintained to recover a liquidated claim against a county which has been repudiated and audit refused by the supervisors.

   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322, 323, 325–330;   Dec. Dig. § 206.*]

6. COUNTIES (§ 197*)—CLAIMS AGAINST COUNTY—LIQUIDATED CLAIM.

   Charter of Western New York Institution for Deaf Mutes (Laws 1876, c. 331, §§ 1 and 2) authorizes the sending to it of deaf and dumb persons between the ages of 6 and 12 in the same manner as such persons may be sent to the New York Institution for Deaf and Dumb Persons under Laws 1863, c. 325.   Laws 1863, c. 325, as amended by Laws 1875, c. 213, § 4, provides that the expenses of such deaf mute children, not exceeding the amount of $300 per year, are to be paid by the county from which sent, and bills therefor, properly authenticated by the principal of the institution, shall be paid upon presentation to the county treasurer.   *Held*, that a claim against a county, fixed by the principal as prescribed by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   143 N.Y.S.—16

statute, was a liquidated claim and did not require audit by the board of supervisors.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 309–311; Dec. Dig. § 197.*]

Action by the Western New York Institution for Deaf Mutes against the County of Broome. Demurrer overruled.

Isaac Adler, of Rochester, for plaintiff.
James K. Nichols, of Binghamton, for defendant.

SAWYER, J. This is an action to recover for the education and maintenance of one Ruth M. Lytle, a deaf mute under the age of 12 years, who was admitted to the plaintiff institution from the county of Broome pursuant to a designation made by one of the supervisors of that county. Defendant demurs to the complaint and urges that it does not state facts sufficient to constitute a cause of action in that it fails to allege the making and filing of a certificate by the State Board of Charities that plaintiff has been duly organized and is prepared for the reception and instruction of deaf mute pupils, and further that an action at law cannot lie against defendant to recover the moneys in controversy. While the rule of pleading invoked by plaintiff is well settled, it does not appear applicable in this case.

Plaintiff is incorporated under a special charter, known as chapter 331 of the Laws of 1876, which authorizes it to receive, and the various supervisors and, overseers of the poor in this state to send to it, deaf and dumb children "in the same manner and upon the same conditions as such persons may be sent to the New York Institution for the Instruction of the Deaf and Dumb, under the provisions of chapter 325 of the Laws of 1863." The act of 1863, referred to, as amended and in force when plaintiff's charter was enacted, provided for the sending of such children by local overseers of the poor, or supervisors, to the New York Institution for the Deaf and Dumb, and certain other similar institutions therein specifically named, or to "any institution in the state for the education of deaf mutes as to which the Board of State Charities shall have made and filed with the superintendent of public instruction a certificate to the effect that said institution has been duly organized and is prepared for the reception and instruction of such pupils." This act of 1863 was repealed by and its provisions included in the Education Law of 1909 and was again, with some changes immaterial to this controversy, made a part of the Education Law as adopted in 1910 (Consol. Laws 1910, c. 16). Defendant contends that by such action the Legislature eliminated all provisions for the education of deaf mute children, except such as are included in the Education Law, and that all statutes in relation thereto theretofore existing are repealed. If this be true before a child can now be sent to plaintiff for care and education at the expense of the county of its residence, unquestionably the prescribed certificate must have been issued and filed, and in an action to recover therefor plaintiff must under the rules of pleading so state in its complaint.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This child was committed to plaintiff's custody prior to the enactment of the Education Law of 1909, and no necessity for the procuring of such certificate existed. Concededly its charter then authorized the sending to it by the supervisor of this unfortunate little one and fixed upon defendant full liability for its care and education. As to that portion of the claim accruing prior to February 17, 1909, the complaint is sufficient. Whether without such certificate it can recover for care and education furnished it subsequent to that date depends upon the determination of whether or not the Education Law directly or by its inconsistent provisions effected a repeal of this part of plaintiff's charter.

[1] The repealing section of the Education Law of 1909 (2000), which is reproduced almost without change by section 1190 of the Laws of 1910, contains a schedule of all the acts which are intended by the Legislature to be thereby repealed, and chapter 331 of the Laws of 1876 (plaintiff's charter) is not therein included. This omission evidences the legislative intention to leave that charter undisturbed and, unless it be utterly inconsistent with the general scheme for education erected by the consolidation, must be so construed.

[2] Section 95 of the General Construction Law (Consol. Laws 1909, c. 22) provides that:

"The provisions of a law repealing a prior law, which are substantially re-enactments of provisions of the prior laws, shall be construed as a continuation of such provisions of such prior law, * * * modified or amended according to the language employed, and not as new enactments."

The effect of this is that the Education Law as it now stands is simply a continuation of the law as it existed prior to the act of 1909. No inconsistencies between these statutes was thought to exist formerly, and the recent endeavor of the Legislature to collate and consolidate our statutory law has in no wise operated to change their status. Plaintiff's rights and powers have not been disturbed thereby, and the certificate now provided for by subdivision 6 of section 978 of the Education Law is not a prerequisite to the authority of public officers to place deaf and dumb children in its keeping. A more serious question is presented by the argument that plaintiff's remedy is either by mandamus or certiorari, as the case may be, and that an action at law will not lie against defendant.

[3] The complaint sets forth that the claim was presented to the board of supervisors of the defendant county, "but that said board of supervisors refused and still refuses to audit the said bills or any part thereof," and further alleges that the claim properly authenticated by the principal of plaintiff "has been duly presented to the county treasurer of Broome county, but that said county treasurer has refused and still refuses to pay the same or any part thereof." Defendant seems to assume that by the allegation that the supervisors refused to audit is intended to be stated that the claim was examined and passed upon as incorrect or illegal. That it was "audited at nothing."

[4] It is the well-understood rule that a demurrer admits the truth of the statement in the pleading attacked, and that words, in the ab-

sence of something clearly indicating the contrary, are to be given their exact and legal meaning. "Audit" means to examine and allow or disallow (People v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; People v. Supervisors, 35 App. Div. 239–242, 54 N. Y. Supp. 782; 4 Cyc. 1056), and the allegation is that the supervisors refused to pass upon this claim or in any manner exercise their judicial functions in relation to it. That they rejected and repudiated the entire transaction.

[5] Prior to the passage of the County Law of 1892, it was uniformly held that the only remedy for the refusal of the board of supervisors to audit a claim against its county was by mandamus, and the only method in which its audit of such a claim could be reviewed was by certiorari, and that an action therefor could not be maintained. This is still the rule in the case of unliquidated claims. Foy v. County of Westchester, 168 N. Y. 180, 61 N. E. 172.

In Kennedy v. County of Queens, 47 App. Div. 250, 62 N. Y. Supp. 276, however, the court in a careful opinion, written by Mr. Justice Goodrich, held that, where the claim was liquidated by the existence of a county obligation for a specific sum, the plaintiff has his dual remedy, either by mandamus or by certiorari, according to circumstances, or by action directly against the county. The court adopted as the true construction of the various statutes, as they stood after 1892, the suggestion of Mr. Justice Cullen in Albrecht v. County of Queens, 84 Hun, 399, 32 N. Y. Supp. 473, that such a case constituted an exception to the general rule as to actions against a county. This exception seems to have been the theory of counsel in Freel v. County of Queens, 9 App. Div. 186, 41 N. Y. Supp. 68, affirmed 154 N. Y. 661, 49 N. E. 124, where an action was maintained against the county upon a liquidated contract, and the same is true in Western N. Y. v. Yates County, 94 App. Div. 1, 87 N. Y. Supp. 534. In neither of these cases, however, was the point brought to the notice of the court, and no attempt was made to pass upon the question. Counsel for defendant calls my attention to the fact that the Kennedy Case has never been elsewhere followed, and cites a number of decisions to sustain his assertion that its doctrine has on the contrary been steadily repudiated. It seems never specifically to have been overruled, and that it stands alone as a precedent seems to be true, for no other case involving the precise question is, so far as I can ascertain, reported. It has, however, been frequently cited both in briefs of counsel and opinions of the court, but none of the cases can be said to constitute a reversal or repudiation of its doctrine.

Foy v. County of Westchester, supra, involved an unliquidated claim and held that such cases must be presented to the board of supervisors for audit, and that their action thereon was only reviewable by certiorari.

In People v. Westchester County, 57 App. Div. 135, 67 N. Y. Supp. 981, the claim in controversy had been presented to the supervisors and audited for an amount less than claimed, and it was held that certiorari would lie to review the audit. In the opinion written by Mr. Justice Jenks, however, the dual remedy is clearly recognized, and the expression, "the two provisions can stand together as furnish-

ing a double remedy for the same default," used in Thomas v. Supervisors of Westchester County, 115 N. Y. 47–55, 21 N. E. 674, 4 L. R. A. 477, is quoted with approval. It is true that two of the justices, while concurring in the result, limited their concurrence, if it was to be regarded that the Kennedy Case was an authority for the proposition that *in all cases* a claimant may maintain an action at law against a county at its option. As has been seen, such was not the holding of the Kennedy Case, and this imports no disapproval of the doctrine which it really enunciates.

In People v. Coler, 48 App. Div. 492, 62 N. Y. Supp. 964, a mandamus requiring the defendant to audit relator's unliquidated claim was sought and granted. Here the Kennedy Case was considered and distinguished with the intimation that, if the claim had been rejected and repudiated, an action at law for its recovery could be maintained. This was explicitly explained in People v. Westchester County, 53 App. Div. 339, 343, 65 N. Y. Supp. 707, 709, by the statement that the Coler Case held that, "where the relator's claim had never been rejected by the board of supervisors, the Kennedy Case was not an authority" for an action at law. This seems to limit that court's previous decision to cases where audit has been refused, but otherwise the case has no bearing here.

Bank of Staten Island v. City of N. Y., 68 App. Div. 231, 74 N. Y. Supp. 284, involved only the question whether the audit of a board of supervisors could be attacked collaterally.

Without attempting to review in detail the many other cases submitted to me as controlling, it is sufficient to say that the force of the Kennedy Case as an authority for the proposition that an action at law can be maintained to recover a liquidated claim against a county which has been repudiated and audit refused by the supervisors seems nowhere to have been disturbed, and I am persuaded that such is the law.

[6] The question is therefore presented as to whether the claim in suit is liquidated "by the existence of a county obligation for a specific sum." There is no allegation in the complaint that the amount charged for the maintenance and education of the Lytle child was fixed by agreement with the defendant or its board of supervisors, nor that same were furnished pursuant to any such agreement. In this respect the situation differs from that presented in the Kennedy Case, where the contract had been expressly entered into and afterwards entirely repudiated by the board. Plaintiff's charter (sections 1 and 2) authorized the sending to and reception by it of "deaf and dumb persons between the ages of 6 and 12 years in the same manner and *upon the same conditions* as such persons may be sent to the New York Institution for the Instruction of the Deaf and Dumb, under provisions of chapter 325 of the Laws of 1863." That chapter, as amended in 1875 (Laws 1875, c. 213), provided (section 4) that:

The "expenses for the board, tuition, and clothes for such deaf mute children * * * not exceeding the amount of $300 per year * * * shall be raised and collected as are other expenses of the county from which such children shall be received; and the bills therefor, properly authenticated by the principal or one of the officers of the institution, shall be paid to said institution by the said county, and its county treasurer or chamberlain, as the

case may be, is hereby directed to pay same on presentation, so that the amount thereof may be borne by the proper county."

This general statute as to compensation is unquestionably applicable for the benefit of plaintiff under its special charter and directs the payment to it of its bills upon demand by the fiscal officer of the county in such amount as its principal shall certify, not exceeding $300 per year. This plan of payment contemplates neither presentation to nor an auditing by the board of supervisors of such bills. The amount which the county is to pay, within the statutory limitation, is fixed by the principal of the institution. The contract in its entirety is created by the statute which empowers an overseer of the poor or supervisor to send a child of the designated class to this institution at the county's expense; the cost to the county to be determined, not at the discretion of the board of supervisors, but, within limitations, by the plaintiff. That a claim under such a statute is so "liquidated" needs no argument. This act was evidently framed by the Legislature in consideration of our public policy toward defectives and with deliberate intent to deprive local boards of supervisors of the power to arbitrarily or otherwise reduce claims for compensation for services of great importance to the state; services highly technical in their nature and the true value of which such a board could ordinarily have no good means of determining. A similar statute relating to the care of the insane (chapter 446 of the Laws of 1874, tit. 1, art. 1, § 16) was under consideration by the court of appeals in Thomas v. Supervisors Westchester County, 115 N. Y. 47, 55, 21 N. E. 674, 676 (4 L. R. A. 477), where the court approves and states the object of the legislation that "it was clearly not intended to leave it (Willard Asylum) without remedy until the meeting of the supervisors and subject it (its bills) to their audit."

Judgment overruling the demurrer, with costs, with the usual leave to answer within 20 days, is directed. Findings and proposed judgment may be submitted for signature.