In the Matter of CENTRAL HIGH SCHOOL DISTRICT No. 1 OF THE TOWN OF HEMPSTEAD et al., Respondents, against UNION FREE SCHOOL DISTRICT No. 13 OF THE TOWN OF HEMPSTEAD et al., Appellants.

(Argued June 4, 1936; decided July 8, 1936.)

**14**

*Raymond Reisler* for appellants.

*William J. Sullivan* for respondents.

CRANE, Ch. J.   Appellant, Union Free School District, owed respondent, Central High School District, the sum of $15,000, and on March 3, 1933, delivered to respondent a check dated March 1 for that amount, drawn on the Bank of Valley Stream, which is a State banking institution, and in which appellant, Union Free School District, then had a balance of $39,000.   Respondent deposited it for collection in the Valley Stream National Bank and Trust Company, and on the same day, March 3, that bank presented it for payment to the drawee, Bank of Valley Stream, which stamped it paid, debited the amount of the check against appellant's account and delivered to the Valley Stream National Bank and Trust Company a draft drawn upon the Chase National Bank payable to the order of the collecting bank which the Valley Stream National Bank and Trust Company forwarded to the Federal Reserve Bank in New York for collection.   The collecting bank credited respondent's account with the amount of the check.   The draft was never paid.   The following day, March 4, all

banks of the State were closed by proclamations of the Governor and the President. The draft on the Chase Bank was returned and the drawee bank canceled its entry of payment of the check. Later the Superintendent of Banks took over the Bank of Valley Stream, the drawee bank, for liquidation.

The issue of law is whether the acceptance of the draft by the collecting bank discharged the drawer of the check, and the courts below, relying upon *Thomas* v. *Supervisors of Westchester County* (115 N. Y. 47), have held that it did not.

I do not consider *Thomas* v. *Supervisors of Westchester County* (*supra*) to lay down any rigid rule that a collecting bank may accept a draft instead of cash as payment. The duty of the collecting bank has always been to accept cash, and I do not understand that we in this State have taken a definite and final stand that collecting banks may accept upon the presentation of checks or drafts other checks or drafts in payment. The *Thomas* case involved many facts which distinguished it from *People ex rel. Port Chester Sav. Bank* v. *Cromwell* (102 N. Y. 477), and Judge FINCH, in writing his opinion, states these facts, including a statement that there was no agreement that a draft should be considered payment. This, however, I take it does not establish the rule that there must always be an agreement to accept a draft as payment before it will be considered such. One of the leading facts in the *Thomas* case was that the draft was worthless when it was received, and Judge FINCH discusses this fact at length in calling it a mistake of fact regarding the worth of the draft. No reason exists why our court should not be in harmony with the almost universal rule as expressed in *Federal Reserve Bank* v. *Malloy* (264 U. S. 160).

That this is the law of our State is quite clear to my mind, by reason of article 19-A of the Negotiable Instruments Law (Cons. Laws, ch. 38), section 350-l, sub-

division **2:** " Except in cases where an item or items is treated as dishonored by nonpayment as provided in section three hundred and fifty-j, when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise, discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

How can there possibly be a preference given in the nature of a trust upon the drawee's or payor's assets if there has been no payment in effect, and the original debtor is still liable for the full amount of the debt which he has paid or is supposed to have paid by the original check or draft? The inconsistency between giving this preference against the funds of the drawee bank and considering all the transactions as though they had never happened, and the original debtor liable as though no paper had ever existed is, to my mind inexplicable, unless the drawee's draft was payment of the original debt.

The orders of the Appellate Division and of the Special Term should be reversed and the application for an order of mandamus denied, with costs in all courts.

LEHMAN, HUBBS and FINCH, JJ., concur; O'BRIEN, CROUCH and LOUGHRAN, JJ., dissent.

Orders reversed, etc.